I'm joined by Richard Derivan, who's representing Ford Motor Company, which was the defendant in the underlying action. I'd like to reserve two minutes for rebuttal, and then Mr. Derivan is going to use one or two minutes of my topside time, if that is okay with the court. Thank you. This court and the Supreme Court have repeatedly declared that the inherent powers of the courts to impose sanctions and hold litigants in contempt, and litigants and their lawyers in contempt, are uniquely subject to abuse, and because of their very potency, such powers must be exercised with restraint and caution. As this court said in the Hanshaw case, the absence of limitations and procedures can lead to unfairness and abuse. That is exactly what happened here. Invoking his inherent powers, Judge Malloy, and in violation of the court's own rules, Judge Malloy imposed unconstitutional, unlawful, and extreme sanctions, and what amounted to a criminal contempt sanction against Mr. Sutter. The court should vacate the sanctions and the contempt in their entirety. The recent ruling from the Ohio – yes, Your Honor. How can we vacate sanctions that have already been paid? The $66,000 cost sanctions has already been paid as part of the settlement with Ford, right? That's correct. The $61,000 or $5,000 payment to the court, that is still in play. But our main request is that the court vacate the contempt sanction against Mr. Sutter. From that, I take it you are not going to argue that Judge Malloy was wrong in sanctioning Sutter and Ford for Sutter alluding to alcohol and to seatbelts, or lack of seatbelts, in his opening statement. Is that true? Your Honor, we do believe, because that was the first predicate for the sanctions, that that was an error. Why was it an error? Well, first of all, the remedy – let me start with the remedy of a mistrial, which was the predicate for the monetary sanctions, which led to the hearing where Mr. Sutter was ambushed with this Ohio issue, flowed from the court's determination to require a mistrial. And the court found later that the allusion to the seatbelts was not enough to require a mistrial. He originally granted the mistrial on that basis. With respect to the alcohol, Mr. Sutter did not reference alcohol. He used the word visited establishments. Judge Malloy ruled as a matter of law that no reasonable person in Montana could ever conclude that visiting an establishment meant that you were not drinking. There's nothing else to do there. And Mr. Sutter pointed out that in Ohio, visiting an establishment could be going to a restaurant. And I looked up the word establishment in the dictionary, and it says a place of business. So we've – One time in the afternoon, he met up with some of his friends and spent the day playing pool, visiting some local establishments. Somewhere around 10 p.m. that night, he made the decision to drive himself home. Yes, Your Honor. I mean, that was the statement. And the – Mr. Sutter – when the court called after the hearing was over, Mr. Sutter and Plaintiff lawyer went into the – to argue this issue. Plaintiff's lawyer did not ask for a mistrial. And again, even assuming – and Mr. Sutter said this to the judge and apologized to the judge when the judge raised this issue, that he was trying to stay within the order. The judge found that he pushed it as hard as he could and then – to get to the line and then crossed the line. And we're not suggesting that the judge couldn't have determined that that did violate the order. We don't believe he did. And he didn't do it in bad faith. We respectfully submit. But Judge Malloy, again, I respectfully submit, went way overboard here. Plaintiff's lawyer did not think that – You don't challenge his decision to declare a mistrial, do you? Well, I think that it was wrong as a matter of law in the sense that – You're concerned about the imposition of sanctions. Yes. And then you're concerned about the contempt. Exactly. And I can move on. You may not like what he did, but you have to live basically with what Judge Malloy did on the mistrial. We are not asking that the mistrial ruling be overturned. But it was part of the problem here that the mistrial I don't think was necessary. It could have been dealt with through an instruction. But let me move on. Let me move on, because I think the first issue that I'd like to address is this issue concerning Mr. Sutter's statements in his Pro Hoc Vice application regarding whether he had been held in contempt. Now, did Judge Malloy depend on those representations as a ground for, we'll call it, the disbarment or the contempt? Yes, Your Honor. I think that the opinion that Judge Malloy issued coursing through that is that issue concerning the alleged misstatement on the Pro Hoc Vice affidavit. And this Court yesterday in the Cole decision, which we have brought to the Court's that a lawyer must have notice and an opportunity to be heard regarding the issues. Well, Judge Malloy was pretty clear that Judge Malloy said we're going to hold a hearing in order to show cause. He did. About why your Pro Hoc Vice application should not be revoked. He did, Your Honor, but he focused on the question of the violation of the orders. And at the hearing, Mr. Sutter raised in describing his background this Ohio proceeding. And at that point, the plaintiff's lawyer cross-examined Mr. Sutter about this Kauffman proceeding and whether he had been held in contempt. And Judge Malloy had the decision before him. And this had not been raised prior to the case. And somewhere along the line, before he issued his opinion, obtained a copy of the affidavit Mr. Sutter had submitted in Ohio. And Judge Malloy then went after Mr. Sutter on this Ohio issue and on the question of whether he had been held in contempt. We have an order from the Kauffman Court, which we've submitted to the Court since the proceedings before Judge Malloy, where that Court says that that was not a contempt because it was not journalized under Ohio law. And Judge Malloy. How could Judge Malloy give notice to Mr. Sutter that he was also going to consider the contradiction between the application which said I've never been held in contempt and the fact that he had been held in contempt in Ohio, when Judge Malloy didn't know that until Sutter blurted it out on direct examination? Well, for two reasons, Your Honor. First of all, Judge Malloy apparently did know that there was an opinion of the Ohio Supreme Court that mentioned this because he had it with him while Mr. Sutter was testifying. He could have told Mr. Sutter that he was concerned about this issue and convened another hearing, let Mr. Sutter file a brief, let Mr. Sutter submit the record from Ohio. Is there any indication that Judge Malloy had that Ohio Supreme Court case at the time he gave Sutter notice that two days hence there would be a contempt hearing? No, there's not, Your Honor. He could have Googled them. In the meantime, found it out and said, wow, it's more than I thought. Well, first of all, Your Honor, at that point, the proper procedure would have been to amend the order to show cause and give Mr. Sutter notice that that was going to be an issue. And regarding and provide him notice, Mr. Sutter offered and his counsel offered at the hearing to provide the record in the Kauffman case. Mr. Sutter explained to the Court that in his view the Ohio Supreme Court had vindicated him when it disqualified the judge who held him in whatever we want to call it, contempt, incarceration. And Judge Malloy issued this stinging opinion against Mr. Sutter. Let me clarify one thing. Yes. You said that the business about the Ohio contempt matter was one of the bases for the contempt citation. If you read Judge Malloy's order carefully, when he finds him in contempt, it's because of the violation of the in limine order, not because of the problems with the Pro Hoc Vici application. Your Honor, on page 198 of the excerpts of record in footnote, yes. And on page 1819. Yes. And when he ER 153 to 155, and when he finishes up with contempt, it's pretty clear what he says. Yes, Your Honor. Lawrence Sutter is adjudged to be in contempt of court for violating this court's in limine order precluding evidence or discussion of Lazar's alcohol use. Your Honor, I think it's absolutely clear. He then follows up. He has a separate heading for Pro Hoc Vici, but where he launches into the discussion of the Ohio matter, that he is folding that into his analysis. He calls it contemptuous, I believe, in the same section. But on page 157 of the excerpts of record, which is. And in the end, his final order, it is through the order, after he imposes the sanctions of $61,000 on page. This is on page 27 of the order, or 162 of the excerpts of record. It is through the order that Lawrence A. Sutter is in contempt of court for violating the court's order in limine regarding alcohol. Your Honor, I think that's right. In contempt of court for lying on his Pro Hoc Vici application. Your Honor, page 198 of the excerpts of record, footnote 2, in response to our motion for reconsideration, which I might add was the first time Mr. Sutter was able to argue these issues. I think the judge makes very clear that the he says that the Pro Hoc Vici issue, the Ohio matter, was additional evidence of his dishonesty. And that's right after he references the contempt and the Pro Hoc Vici status revocation. And he says it was not the reason, i.e., the only reason, is how I read that. So I think it's very clear, Your Honor. And it was clear that Judge Malloy was angry about this. And if he had held a full hearing and allowed Mr. Sutter a full briefing on this, I believe the result would have been different. And on the concerns of Mr. Lawrence. Pardon me? What did he need? What further? There was a full evidentiary hearing. No, there was not, Your Honor. He testified? He testified, and this issue was sprung on him at the hearing. Judge Malloy. Who raised the issue in the first place? Mr. Sutter disclosed it in discussing his background and laying it out. So he was not hiding it from the judge. But at that point, there was no indication that this was going to be an all-out attack on Mr. Sutter's standing as a lawyer. And Judge Malloy converted this proceeding into this proceeding about his standing, about his character, about his fitness to practice law. And he issued this opinion without allowing Mr. Sutter to present evidence. He could have brought in judges from other jurisdictions around the country. He could have brought in character witnesses. He could have brought in an expert witness to interpret the Ohio rule and the Ohio contempt sanction and the Montana rule and explain his position. That wasn't the basis for Judge Malloy holding him in contempt. I respectfully disagree, Your Honor. But even if it is not, the contempt ruling is improper. It is a criminal contempt sanction. It was not imposed to compensate the plaintiff. It was not imposed to compensate anyone. It was simply a way to punish Mr. Sutter and vindicate the court. What was the sanction imposed? Is that the disbarment? Or the revocation of the ProHoc feature? That was one of the one part of the sanctions. Mr. Sutter was also held liable for the 16th. Was that consistent with a, you know, I'll call it non-criminal contempt? In other words, to, you know, to remedy the situation? Your Honor, I believe if the court had proceeded under its own rules, there might be an argument that that was civil contempt, but it did not. It invoked its inherent power, and it used this opinion to castigate Mr. Sutter. And that is an extreme disability on his ability to practice law. The plaintiffs didn't proceed under its own rules. The court did not proceed under its own rules to revoke Mr. Sutter's ProHoc feature status or to hold him in contempt. The court said all of its rulings were done pursuant to its inherent power, which is a dangerous power that was abused in this case. I didn't know the Montana court had a specific rule about revoking ProHoc feature. Is there some procedure for that? Yes, Your Honor. It's very elaborate, very specific. It would have required an independent counsel to be appointed. You mean the same procedure as a disbarment of a regular member? It would apply to that, but it also specifically addresses, and it's part of the appendix to our brief, Your Honor, the question of a misleading statement on a ProHoc feature application. It's in the addendum to our brief. It's Rule 8314. 8314? Yes. And it's in the appendix to our blue brief. It's at the bottom of the page 59. It then lays out the entire set of rules for doing this, which would have required that the matter be referred to a different judge, but the judge did not follow these rules, the rules of Montana. This court in the Wiseman decision, which was cited in the decision yesterday in Cole, said that where a court has rules about ProHoc feature status or revoking the procedures for ProHoc feature admission, the court should follow its own rules. That was not done here. That's a 9th Circuit court case that came out yesterday? Yes. And what's the name? The Cole case. Cole doesn't preclude the application of contempt, though, in revoking one's ProHoc feature status. It does not, Your Honor. It does not, Your Honor, but it would require a different set of procedures, which would include notice, exactly, and an opportunity to be heard. Did he get notice? No. He got notice that Judge Molloy was contemplating revoking his ProHoc feature status. Yes, Your Honor, but not on the grounds. Judge Molloy was crystal clear in telling Mr. Sutter that he was contemplating revoking his ProHoc feature status because he violated the eliminating order. Yes. And that's what Judge Molloy did. No, he did not, Your Honor. He revoked his ProHoc feature status. That ProHoc feature description is filled with anger by the judge and about this Ohio matter not being disclosed. That part, the ProHoc feature replication, it is crystal clear he relied on that statement, and he didn't. What are you saying? Even though there's notice that the ProHoc feature status is in jeopardy, it's insufficient if it doesn't disclose the particular ground being contemplated as the basis for the action? Exactly, Your Honor. And this Court in Cole yesterday said it is axiomatic. You have a page on that? Yes. It's on page 5 of the Westlaw printout that we provided the Court with today. Go ahead. And it's the first full paragraph on the right column. The Court said it's axiomatic that procedural due process requires notice of the grounds for and possible types of sanctions. Judge Molloy went beyond. So your concern is that although Judge Molloy informed Mr. Sutter that he was contemplating revoking his ProHoc feature status, holding him in contempt, putting my notice about a hearing, that at the hearing, at the hearing when Mr. Sutter raised his, this incident in Ohio in the course of his direct examination, that Judge Molloy should have stopped the proceedings and said, ah, another potential ground here to revoke your ProHoc feature application. And having heard that, I might, I might revoke your ProHoc feature application on that basis alone. So do you need more time? We're going to hold this and we're going to take a break, and we're going to resume this after you've had a chance to contemplate. Because I'm now thinking about also relying upon your misrepresentation of your potential misrepresentations as a, as another ground for revoking your ProHoc feature application. Is that what you're arguing? That would be, that would have been one facet of our argument. Yes, Your Honor, that would be the due process requirement. If someone is being tried for a crime, for assault, and says something there in their testimony, and the judge says, that sounds like murder, you can't try. Let's do a little, what Judge Molloy did here was he found in his own judgment that Lazar violated the eliminate clause. Mr. Sutter. You said Lazar, yes. The eliminate order. And he hears his testimony from Sutter about this other incident, this encounter that he has with this Ohio judge. And he says, that just sort of confirms my impression of Mr. Lazar playing the edge, pushing things to the edge. And it's not, it doesn't strike me as though, as that he's relying upon that as the basis for revoking his ProHoc feature status. His concern throughout this order was that he violated the eliminate order, which resulted in a mistrial, a tremendous cost to the plaintiffs, tremendous cost to the court, and disrupted the whole thing, and delayed the ultimate trial of this case. Your Honor, I would. And that's what's driving Judge Molloy. Well, what was driving Judge Molloy, it's clear, Your Honor, I respectfully suggest, this opinion, he mentions it at the beginning of the opinion, and he goes into great detail in the ProHoc feature status. Clearly, part of it, it started out regarding this mistrial issue, but. Well, the whole thing wouldn't have started if it hadn't been for the mistrial. Exactly. And I think it was wrong to grant a mistrial. I think that that could have been cured with instructional issues, and I think Judge Molloy abused his discretion on that. But regarding this ProHoc, it's clear, Your Honor, he was relying on that, he issued this opinion, and I want to make this point before I sit down, that this is someone's professional reputation. This was interpreting orders. Again, we recognize the judge could find that it went too far on the order. It was not bad faith. But Judge Molloy issued this opinion, and he published this opinion. It's now in the F-Sub, and he castigates Mr. Sutter for not using full disclosure. But the judge, who's criticizing the lawyer for not engaging in full disclosure, does not even mention the Ohio Supreme Court's decision, finding that the judge who had imposed this incarceration in Ohio had been disqualified in that case for bias against Mr. Sutter and his clients. He does not mention that the Court of Appeal in Ohio found that the entire trial that produced this alleged contempt sanction threw the case out and ordered a new trial. That is inaccurate, and it's misleading, and it's highly damaging. And the judge relied on that Ohio proceeding in his opinion, and he says it again. On ER-198 in footnote 2, he makes clear it affected his decision on both components of the contempt and the PROHOC application. So we believe that Mr. Sutter did not have adequate notice, and that under Cole and under the Weissman decision, under the Little decision, which we've cited all from this court, that means that the sanctions and the contempt and the revocation are invalid and should be overturned, and the Court should enter judgment for Mr. Sutter. You're not leaving much time for four. I will leave some time, and with respect to the court. You're taking 12 seconds. Your time is all gone. Could I get a minute for rebuttal, Your Honor? We'll give Mr. Derevan a minute. I can yield my time. You can yield your time if you want to speak. That's fine. We'll hear from the other side then. You decide not to yield your time. I would yield it if Mr. Boutros could have rebuttal. Let me ask you a question. Yes, sir. Why should Ford pay the $5,000 of court costs if Sutter, their attorney, is an independent contractor and there's no vicarious liability? Well, Ford did not challenge the award on that basis, Your Honor, and that's not our argument. But I would like to take, in the minute I have, I'd like to tick off five reasons why I think the mistrial order was an abuse of discretion. And I think they're a valid reason to show that the judge overreacted. Wait a minute. Why does that matter? Since you've settled the case and you've agreed to pay the monetary sanctions, I mean, isn't the mistrial order something we can do about that mistrial order now? Yes, Your Honor. It's still a live issue for this reason. The order of dismissal with prejudice specifically carves out the entitlement to refund of the $5,500 if we prevail. And that was put in there so this would be a live issue on the field. But you haven't overturned the grant of the mistrial in order to grant you relief. I know. But it's back in the beginning, which sort of was the basis for all this. And the part of the judge's anger was the fact that he had to grant a mistrial and we say he didn't. I'm going to give you a little bit of background. And if I could get to my five reasons very quickly. First of all, the plaintiff didn't make a contemporary objection. Number two, when the plaintiff did have the post-trial sidebar, the plaintiff didn't even think the argument was serious enough to request a mistrial. First he said, I want an admonishment and maybe at some point we'll do a curative instruction. When the judge said, no, I'm going to grant a mistrial if you ask for it, the plaintiff said, well, I've got to think about it. I'm not even sure I want it. Then the judge granted on the basis of the seat belts, which he later at ER 157 said could have been fixed with a curative instruction, leaving only the alleged references to the local establishments as the basis for the mistrial. In the order, the judge sets up I think three false alternatives to granting a mistrial. And this is at 153 and 154 of the record. First the judge says, I could have instructed the jury that alcohol use is irrelevant. That would have not worked. I could have told the jury to ignore the statement. That would have not worked. And third, I could have just let everything be silent and not worried about it, and that wouldn't have worked. But what he could have done is he could have said, number one, there was talk about local establishments. I want you, the jurors, to know that there is no evidence in this case that Mr. Lazar had been drinking or that drinking played any role in this case. So if that comes from the judge, that's a curative effect. He could have told Mr. Sutter to say something like, in Ohio. Sotomayor did Ford suggest that particular instruction? Pardon me? Did Ford suggest that instruction? We didn't have a chance, Your Honor. Did you suggest that instruction at that time? No, we did not. But we suggested that Mr. Sutter did not violate the order, which said the order was very vague. It said no reference to alcohol use. And he didn't mention alcohol. He didn't mention drinking. I mean, it's an inference. I grant you it's an inference. Pardon me? It didn't even say that. It said no evidence of alcohol. It didn't say anything about no reference to alcohol in voir dire. And there was no evidence of alcohol. I grant you the judge said that the jurors could have inferred that the reference to local establishments was a violation of the order. But what I'm saying is when he didn't use the word alcohol, didn't use the word there is no evidence of alcohol in this case and no evidence that any alcohol played a role in this case. And I instruct you that Mr. Lazar's conduct has nothing to do with the liability issues in this case. And those are things that the judge could have put in this order. We're confused about arguing now about what the judge could have done or what he should have done. Because, Your Honor, if the mistrial isn't granted, if the judge had stepped back from his peak at Mr. Sutter and realized that, pardon me? I said, if it was granted and you settled on that, you agreed to pay, you know, the cost of the plaintiff. We do. The mistrial is still a live issue on appeal, Your Honor. But the point is, it was the declaring of the mistrial, I think, that set the wheels in motion. It's a live issue on appeal? If we sustain your position and you go back to trial in view of your settlement? No, Your Honor. Then how is it a live issue? It's a live issue because the $5,500 in sanctions gets paid back to Ford. Granted, we've settled the underlying case. But my point is, and the reason I'm going to go back to trial in view of your settlement. And the whole basis of the $5,500 is that the mistrial was not properly granted, not that you are not vicariously liable for the acts of an independent contractor. Correct. Correct. That's correct. And the reason I'm doing this is because, number one, Mr. Sutter is impaired. Ford's use of Mr. Sutter is impaired by this order, number one. And number two, it was the mistrial that set this whole chain of events in motion. And we think as the judges stepped back, acted more calmly, realized he didn't have to declare a mistrial, none of the rest of this would have happened. Thank you. All right. Thank you. We'll hear from the plaintiff now, right? Good afternoon. Good morning. My name is Michael Weissman, and I am a counsel for Mr. Lazar. I am not, however, the Weissman described in the case that's been cited, nor is there any relation. Context is everything. Mr. Lazar was paralyzed in an accident in February of 1997. In February of 2002, the case was scheduled for trial. On two occasions, it was continued so that by the time we arrived at court and the events that we're here to talk about today occurred, it had been five and a half years since Mr. Lazar had been injured. Context, as I say, is everything. Having heard Mr. Sutter's opening statement, plaintiff's counsel, me, stood up at the end of the opening statement and asked to be heard at sidebar. Judge Malloy said no. At 5 o'clock that day, after a full day of trial, Judge Malloy said he'll hear us now. As of that point in time, there had been no opportunity to consult with the client, as I pointed out, at the time of the hearing. Given that my client was a paralyzed man who had waited five and a half years for a day in court, it seemed to me appropriate to consult with the client before requesting a mistrial. As the court ---- In the world, you had your witnesses all lined up and you wanted to weigh the effect of this misconduct and you wanted to talk about it with your client. That is absolutely right, Your Honor. The record establishes that three experts ---- Time on that. The record establishes that three experts had flown to Missoula, Montana, and were present and prepared to testify, one of whom testified on Monday, the first day of trial. Two others were on deck. As the court points out, the basis for the contempt, and it's in the record at ER 153 to 157, establishes that the contempt, the basis for the contempt was Sutter's conduct during trial. Judge Malloy said during the hearing and said in his opinion that words alone cannot convey what transpired. Tone, intonation, and clear implication of what Mr. Sutter was telling the jury was what led Judge Malloy to rule that this was contemptuous conduct. You were sandbagged. Do you really care whether Sutter comes back or not? You mean to Montana? Yes. I'm from Boston. I mean, what have we seen? We used to say in Cuba, do you have a candle at this funeral? I mean, do you care one way or the other? What happens to Sutter on the contempt proceeding and the Frohek-Veche determination? You've got your money. The money that's in play, the $5,000, is going to go to the court. That's not going to go to you. If Sutter walked in here, would you recognize him? Yes. Well, maybe you've got some. But I want to be very clear. Lawyers are offices of the court, and I thought long and hard about what the appropriate and ethical responsibility that I had given that the case had settled. I point out, although there's not specific evidence about the reasons for the settlement, that after a paralyzed man has been deprived of his day in court and the new trial is set a year hence, September of 2003, that has some impact on the decisions to settle. But it also seems to me that an advocate in the district court, when a matter respecting the conduct of what occurred in the district court comes up, that an appropriate thing for an advocate to do is to appear before this court and present the perspective. I want to just focus briefly on what Judge Malloy actually ordered, and that is found in really two places. The first is in the decision itself, and the second is in the docket, which is at ER-234. Judge Malloy ordered three very specific things when he used the word order. First, he ordered the sanctions, the monetary sanctions, clearly compensatory. Second, Mr. Sutter was held in contempt, and as I mentioned and as was very clear, the contempt was based upon the violation of the motion limiting respecting alcohol. And third, and I'm going to quote, it is further ordered that Lawrence A. Sutter's admission pro hoc v. J is withdrawn and he is no longer permitted to act as counsel for Ford in this matter. That's what the order was. That, too, was compensatory. Judge Malloy found that Mr. Sutter's conduct had deprived Mr. Lazar of his day in court. It is a reasonable and compensatory sanction to find that a lawyer who has caused that mistrial ought not be permitted to practice again in that case. Is there anything to indicate that Judge Malloy gave notice to Sutter that not only was he going to be removed as Ford counsel pro hoc v. J in this case, which would be compensatory to you because you wouldn't have to face him again in this case, but from Missoula, Montana for the rest of his life? Was there any indication that that was a potential sanction in the notice? I think the answer is yes. Where is that? I'll give you the record citation saying you're liable to be removed in this case and for the rest of your life from Missoula, Montana. Let me share with the Court the words used, and the answer is it's at ER 61 to 62. He says, first, in describing the purpose of the hearing, he says, first, this is not an exact quote, to decide on monetary sanctions. Second, and this is a quote, I'm also going to issue a show cause why he should not be held in contempt of the Court for violating the Court's orders, and that's exactly what he ultimately did, I would submit. And third, and I will quote again, further, I'm going to require that he, referring, of course, to Mr. Sutter, show cause why he should not have his right to appear here pro hoc vise withdrawn from the Court, and that he be banned from further participation in this case. And you think that the words, have his right to appear here, means Missoula, Montana for the rest of your life? I think it does. Out in context, here pro hoc vise withdrawn from the Court, and that he be barred from further participation in this case. Right. You don't think that's limiting it to, Mr. Weinstein, you're never going to have to face Mr. Sutter in this case again? I don't think that's what the words mean, but even if they did, Judge, and the point that I was emphasizing is it's not entirely clear, and I would submit that the order I set forth both in the opinion and the docket is a revocation of the pro hoc vise in the Lazar case. Period. That's what the docket says, and that's where orders are recorded in the Court, and that's why I. Go ahead. The final order, when you go through his particular order, it just says his pro hoc vise application is revoked. For this case. For this case. In the paragraph before the three paragraphs in which he has capital letters in his order, it says, it does say that he is permanently barred. But in the actual order that is memorialized both in the opinion and the docket, it doesn't say that. All right. And as I said. I wouldn't object to our making an order, making it clear that the only case from which he's removed Missoula would be the Lazar case. It seems to me that that is what the order says, and that is a purely compensatory sanction. Now, with respect to notice, Judge Malloy did what he could do on Tuesday, the day that the mistrial was ordered, and he gave notice about what was going to happen on Thursday. Mr. Sutter chose to testify. Judge Malloy told Mr. Sutter that he'd be subject to cross-examination, but there is nothing in the record to indicate that the issue of the other case, the Kauffman case, would have even been an issue had Mr. Sutter not chosen to testify. Moreover, the hearing was in October. Judge Malloy issued his decision in January. There was nothing that precluded Mr. Sutter from seeking to supplement the record, and, in fact, he did. On his motion for mistrial, excuse me, on his motion for reconsideration, he supplemented the record by providing additional materials. I'd like to, if I may briefly, address one other issue, which is the judicial estoppel issue. I will confess that this is a first for me in dealing with this type of situation. We have brought to the Court's attention affidavits filed by Mr. Sutter and two other proceedings in which he has said, for example, most recently in Massachusetts on February 14, 2004, quote. I apologize. They weren't before the district court. They were not. That is absolutely right. And the notion of judicial estoppel is that advocates must be consistent in their representations to courts, whether they be in California, Montana, Massachusetts or Indiana. And I don't need to, but, so the doctrine of judicial estoppel presupposes that there's already been a proceeding and now we're looking at that proceeding in retrospect, and that's the context in which we brought those to the Court's attention. I have never been reprimanded, suspended, disbarred or disciplined by any State or Federal court. It is inconceivable, I submit, that that statement is consistent with the positions that Mr. Sutter has advocated here. One final point. There was reference to the local rule, and the local rule, rule 83.3E3E, requires that the attorney disclose whether he has ever been held in contempt or otherwise disciplined by any court for disobedience to its rules and orders. I think the language speaks for itself. Finally, with respect to the inherent power issue, counsel cites the rule 83.1.14, but omits to mention the third paragraph of that rule, which says, and I quote, nothing contained in this rule shall be construed to limit or deny the court such powers as are necessary to main control over proceedings before it, such as contempt power. That is exactly what Judge Malloy did here, and I submit that it is critical to the administration of justice that district judges be able to maintain control over the proceedings in their courtroom. Thank you very much. All right, thank you. This case is submitted. I want to say, I do agree with Mr. Weissman, you know, as Judge Baye indicated, you have no direct, you know, monetary amount at stake on this appeal. But we appreciate your recognizing your duties now to the court to, in effect, protect the court's judgment. They're going out to be here to do it. We thank both sides for your argument. This case is now submitted for decision. Next case on the calendar is Nell Soffman v. Circuit City Storage.
judges: Tashima, Paez, Bea